**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **LISA J. VELA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:10-CV-461 (MTT)** |
| | ) | |
| **TAYLOR COUNTY BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>ORDER</u>

This matter is before the Court on Defendant Taylor County Board of

Education's[1] Motion for Summary Judgment.  (Doc. 11).  For the following reasons, the

Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

This is a retaliation action by Plaintiff Lisa Vela pursuant to the Family and

Medical Leave Act, 28 U.S.C. § 2601 *et seq.*  The Plaintiff began working for the

Defendant as an administrative assistant with the Safe Schools Healthy Students

program in September 2008.  Rufus Green is the Director of the SSHS program.  In

October 2009, the Plaintiff was placed on administrative leave by Superintendent

Wayne Smith.  The Defendant claims the Plaintiff was placed on administrative leave

because Green was not satisfied with the Plaintiff's job performance and Smith wanted

to verify Green's claim by placing her in another position.  The Plaintiff claims she was

---

[1] The proper party is the Taylor County School District, not the Taylor County Board of
Education.  *Cook v. Colquitt County Bd. of Educ.*, 261 Ga. 841, 412 S.E.2d 828 (1992).  After
oral argument, the Plaintiff moved for leave to amend the complaint to substitute the Taylor
County School District.  (Doc. 18).  The Motion for Leave to Amend is **GRANTED**, and "the
Defendant" shall refer to the Taylor County School District.

placed on paid administrative leave because she was caught in the middle of a personal conflict between Green and her non-blood-related family member who worked for the Defendant.

The Plaintiff was then offered an administrative assistant position with the 21st Century Community Learning Center, a collaborative effort between the Defendant and a variety of community partners.  Before the Plaintiff began on November 9, 2009, her new boss Theresa Byrd sent an email to her that read, in part: "Lisa, I have attached the administrative assistant job description for your reference.  Go ahead and open the document and review.  I understand some of these requirements are beyond your current comfort zone."  (Doc. 14, at 118).

The Plaintiff's mother was diagnosed with cancer in November 2009[2] and had surgery on November 24, 2009.  The Parties agree the Plaintiff missed work, with pay, from November 19, 2009, through December 9, 2009, to care for her mother.  While on leave,[3] the Plaintiff requested additional time, and Byrd told her that additional time would be unpaid.[4]  The Plaintiff chose to return to work instead of taking unpaid leave.

---

[2] Although it is not clear from the Plaintiff's deposition when her mother was diagnosed, it is clear the Plaintiff's mother was diagnosed at a time when the Plaintiff reported to Byrd.

[3] It does not matter whether this time is characterized as sick leave or FMLA leave because FMLA applies to both.  *Strickland v. Water Words and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1204-06 (11th Cir. 2001).  When a serious medical condition is unforeseeable, "the employee need only provide his employer with notice sufficient to make the employer aware that his absence is due to a potentially FMLA-qualifying reason."  *Id.* at 1208-09 (internal quotations and citations omitted).  "Once an employee taking unforeseeable leave informs his employer that potentially FMLA-qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection." *Id.* at 1209.  Not surprisingly, the Defendant does not challenge that the Plaintiff's reason for leave qualified for FMLA.

[4] The Parties dispute whether FMLA specifically was mentioned in this conversation.

Byrd met with the Plaintiff when she returned to work on December 9, 2009.

During this meeting, Byrd terminated the Plaintiff because she did not have the skills for

the job.

The Plaintiff originally brought this FMLA action for unlawful interference and

unlawful retaliation.  The Defendant moved for summary judgment on both counts.  The

Plaintiff only briefed the retaliation issue in her Response and affirmed at oral argument

she now is only bringing a retaliation claim.

## II.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material facts and that the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a

verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281

F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*,

941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove

that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp. v. City of*

*Atlanta*, 281 F.3d at 1224.  The district court must "view all evidence in the light most

favorable to the nonmoving party, and resolve all reasonable doubts about the facts in

its favor."  *Id.*

### B.    Retaliation

"To prove FMLA retaliation, an employee must show that his employer

*intentionally* discriminated against him for exercising an FMLA right.  Unlike an

interference claim, an employee 'bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus.'" *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1267-68 (11th Cir. 2008) (internal quotations and citations omitted) (emphasis in original).

"To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate [nonretaliatory] reason for the adverse action.  If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (internal quotations and citations omitted). "A plaintiff is not allowed to recast an employer's proffered [nonretaliatory] reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Here, the Defendant concedes the Plaintiff's prima facie case, but claims the Plaintiff was terminated because she could not perform the functions of the job.  The Defendant claims the Plaintiff was reassigned to verify Green's assessment of the Plaintiff's job performance, an assessment that was quickly confirmed.  To support its

position that the Plaintiff lacked the skills for the job, the Defendant attached Byrd's affidavit to its Motion for Summary Judgment that reads, in part:

> After just a few days on the job, I found that Plaintiff's skills were deficient. Plaintiff was unable to create any documents on the computer as required by her position.  Plaintiff could not make email lists.  Nor could she attach documents to emails or open email attachments sent to the Center.  She did not understand the Adobe program and could not open documents sent to the Center as Adobe documents.  Plaintiff could not open or navigate Excel program as required for her position.  Plaintiff could not develop PowerPoint presentations.  Plaintiff could not edit her own work and I could not rely on her to finalize any Word documents.  Additionally, I found Plaintiff could not complete other tasks necessary to her position. She could not process employee time sheets.  I also gave Plaintiff the duty of supervising approximately fifty students during the afternoon tutoring session.  Instead of properly supervising the students as required, she sat on a bench.

(Doc. 11-2, Affidavit of Theresa Byrd at ¶ 9).

The Plaintiff did not rebut Byrd's specific testimony that she was not qualified. Although the Plaintiff's deposition can be read to claim she had some of the skills for the job, she admits that she could not use Microsoft Excel and Microsoft PowerPoint.  (Doc. 14, Deposition of Lisa Vela, at 54).  The Plaintiff also points out that Byrd was aware of her limitations before she started working, and she would not have been reassigned to the same position if she did not have the skills for the job.  However, these arguments amount to quarreling with the wisdom of the Defendant's decision, and do not rebut the legitimate, nonretaliatory reason that she could not perform some job functions.

Accordingly, because the Plaintiff has failed to prove the reason for her termination was pretextual, the Motion is granted.

### III.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**.

SO ORDERED, this the 29th day of May, 2012.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT